UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10087-RWZ

ALNYLAM PHARMACEUTICALS, INC.,
and ISIS PHARMACEUTICALS, INC.

v.

TEKMIRA PHARMACEUTICALS CORPORATION

MEMORANDUM OF DECISION

September 24 2012

ZOBEL, D.J.

Plaintiffs Alnylam Pharmaceuticals, Inc. ("Alnylam") and Isis Pharmaceuticals, Inc. ("Isis"), have sued defendant Tekmira Pharmaceuticals Corporation ("Tekmira") for patent infringement, claiming that Tekmira has infringed six pharmaceutical patents held by Alnylam and Isis. Tekmira moves to disqualify Alnylam's counsel for an ethical conflict.

I.   **Background**

   **A. The Present Suit**

In 1998, the University of British Columbia ("UBC") exclusively licensed certain patents to Tekmira's predecessor corporation, Inex Pharmaceuticals Corporation.[1] Through amendment of this 1998 agreement, UBC later transferred to Tekmira all

---

[1] Since the parties agree that Tekmira is Inex Pharmaceutical Corporation's successor in interest, the court will refer to both as "Tekmira."

1

substantial rights in five of the patents at issue in this case.[2] Tekmira granted Alnylam an exclusive sublicense over these five patents in 2007, limited to the diagnosis and treatment of diseases using specific pharmaceutical methods. That exclusive sublicense was amended and restated in 2008.

The present case stems in part from a conflict over that sublicense. In 2010, Tekmira entered into a multi-year agreement with Bristol-Meyer Squibb ("BMS") to develop new drug products. Alnylam claims that under that agreement, Tekmira has provided BMS with drug products that use the patented technology and fall into Alnylam's exclusive field. Therefore, Alnylam claims, Tekmira has violated its patent rights under the exclusive sublicense.

### B. The Purported Conflict

In 2009, UBC sued Tekmira for royalties it claimed Tekmira owed as a sublicensee under a separate license agreement between UBC and The Liposome Company ("TLC"). UBC's complaint claimed that Tekmira owed royalties directly to UBC under the UBC-TLC and TLC-Tekmira licenses, even though the TLC-Tekmira license was fully paid-up. During that litigation, Tekmira was represented by Orrick, Herrington & Sutcliffe LLP ("Orrick"). The 2009 action was not brought on the basis of the 1998 UBC-Tekmira agreement, and UBC's complaint does not explicitly refer to that agreement. However, Tekmira has submitted an affidavit by its lead counsel in the UBC-Tekmira litigation—also Tekmira's lead counsel in the present action—

---

[2] Specifically, U.S. Patents No. 6,858,225; No. 6,815,432; No. 6,534,484; No. 6,586,410; and No. 6,858,224.

representing that the 1998 agreement was "[o]ne of the agreements involved" in the UBC-Tekmira dispute. Docket # 28, Howard Decl. ¶ 3.The litigation was settled by mediation.

Barrington Dyer was an associate at Orrick in 2009 who worked on the UBC-Tekmira case. Dyer billed Tekmira 137 hours on the case over a one-month period. He discussed the case with other Orrick attorneys, spoke with at least one Tekmira representative, and attended the mediation session resolving the lawsuit.

In April 2012, Dyer left Orrick and joined McDermott Will & Emery LLP ("McDermott"). McDermott represents Alnylam in the present case. Based on Dyer's past involvement with a Tekmira matter, Orrick informed McDermott of the potential conflict regarding this case, and McDermott retained outside counsel to investigate. McDermott's outside counsel concluded that Dyer's involvement in the UBC-Tekmira litigation did not require McDermott's disqualification in this case. As a precaution, since his first day at McDermott, Dyer has been screened from their representation of Alnylam by an internal ethical wall.[3]

## II. Legal Standard

The District of Massachusetts follows "the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts." LR 83.6(4)(B).

---

[3]The details regarding the ethical screen are given in Docket # 31, Ex. 14. Generally, Dyer has been prohibited from participating in McDermott's representation of Alnylam; discussing that representation with any McDermott or Alnylam employee; or discussing with Alnylam any matters on which Orrick represented Tekmira. Furthermore, all McDermott employees participating in the present case are aware of McDermott's ethical screening.

According to Massachusetts Rule of Professional Conduct 1.10(d), a firm generally may not represent a client if a lawyer at that firm previously represented an adverse client in a "substantially related" matter. Mass. R. Prof'l Conduct 1.10(d). That general rule is subject to two exceptions: if the conflicted lawyer has no material information about the matter, or if the conflicted lawyer had "neither substantial involvement nor substantial material information relating to the matter" and is screened from participation in the matter. Id.

In a motion to disqualify under Rule 1.10(d), the movant has the initial burden of showing that the previous matter is "substantially related" to the present matter. Alere Inc. v. Church & Dwight Co., Civil Action No. 10-10027-DPW, 2012 WL 1098420, at *3 (D. Mass. March 31, 2012). The court determines whether two matters are substantially related by focusing on whether "the relationship between the two matters is such that it is reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter." Id. (quoting Dee v. Conference Holdings, Inc., No. 976608, 1998 WL 1247926, at *2 (Mass. Super. Ct. July 14, 1998)). "Where two matters are factually and legally distinct, courts will not find substantial relation." Alere, 2012 WL 1098420, at *3.

### III.   Analysis

Disqualification of counsel is "a drastic measure which courts should hesitate to impose except when absolutely necessary." Adoption of Erica, 686 N.E.2d 967, 970 (Mass. 1997). In this case, Tekmira has failed to show a "substantial relationship" between the 2009 UBC-Tekmira dispute and the present case that would require

disqualification.

Tekmira argues that the matters are substantially related because both involve the 1998 UBC-Tekmira license agreement. But although the 1998 agreement may appear in both cases, it is not central to either. The 2009 UBC-Tekmira dispute centered on a separate 1984 license between UBC and TLC, and a subsequent 2003 sublicense between TLC and Tekmira. As noted above, UBC's complaint does not even mention the 1998 UBC-Tekmira agreement. While the court accepts as undisputed Tekmira's affidavit that the 1998 agreement was "involved" in the 2009 case, it clearly was not at the factual or legal core of that dispute. Likewise, the 1998 agreement is only relevant to this case as the parent license under which Tekmira sublicensed its patents to Alnylam. While the sublicense from Tekmira to Alnylam may be important to the present case—as demonstrated by Tekmira's motion to dismiss—the parent license appears less central.

Furthermore, even if certain provisions of the 1998 agreement may become important in this case, they are unlikely to be the same provisions that were involved in the 2009 UBC-Tekmira dispute. That dispute involved UBC's rights to royalties under the UBC-TLC and TLC-Tekmira agreements. The present case, on the other hand, has nothing to do with royalties. It depends instead on whether Tekmira's contract with BMS led Tekmira to use the patented technology in Alnylam's exclusive field. This suit therefore focuses on a wholly different set of issues than the 2009 suit. For instance, Tekmira represented at oral argument that the present case would require construing the parties' rights—particularly Alnylam's right to enforce the patent—in light of the 1998 agreement. Even if that proves true, the parties' rights to enforce are entirely distinct

5

from the royalty rights at issue in 2009. Given these differences, Tekmira has not shown that the 1998 agreement creates a substantial relationship between the two matters.

Tekmira compares this case to Smith & Nephew, Inc. v. Ethicon, Inc., 98 F. Supp. 2d 106 (D. Mass. 2000). But the differences only underscore why there is no substantial relationship here. In Smith & Nephew, an attorney represented two researchers in drafting their employment contracts with a new employer. Later, the employer sued the two researchers under the same employment contracts, claiming ownership of certain patents belonging to the researchers. The researchers moved to disqualify the employer's counsel, because the attorney who had represented them in drafting their employment contracts now worked for the law firm representing the employer. The court granted the motion.

Here, Dyer did not represent Tekmira in drafting the Tekmira-Alnylam sublicense, or even in drafting the UBC-Tekmira parent license. He also did not represent Tekmira in any litigation over those licenses. Instead, he represented Tekmira in a dispute over a completely different license, between Tekmira and a different party. Smith & Nephew in no way supports finding a substantial relationship here.

Tekmira points to two other similarities between the cases, but neither establishes a substantial relationship. First, Tekmira is represented by the same lead counsel in this case as in the 2009 dispute. If that fact is even pertinent to determining whether two matters are substantially related, it bears little weight. Second, Tekmira indicated at oral argument that it may file a motion arguing UBC is a necessary party in this suit. If UBC enters this suit, then two of the parties in this case would also have

6

been in the 2009 dispute. But that does not establish a substantial relationship, especially where (as here) the factual and legal cores of the matters are distinct. See, e.g., ebix.com, Inc. v. McCracken, 312 F. Supp. 2d 82 (D. Mass. 2004) (finding matters not substantially related even though attorneys previously advised two parties that were now adverse).

**IV.   Conclusion**

Because Tekmira has not shown that this case is "substantially related" to its 2009 dispute with UBC, disqualification is not required. Tekmira's motion to disqualify McDermott is therefore DENIED. As a precaution, however, the court ORDERS McDermott to maintain the ethical wall separating Dyer from its Alnylam representation until the present action is concluded.

|  |  |
|---|---|
| September 24, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |